IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HENRY JINRIGHT ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO: 2:08cv299-WC |
| ) | |
| WERNER ENTERPRISES, INC.; ) | |
| DOSS MORELAND; and SAFECO ) | |
| INSURANCE COMPANY OF ) | |
| AMERICA, ) | |
| ) | |
|    Defendants. ) | |

**MOTION FOR PARTIAL SUMMARY JUDGMENT BY WERNER ENTERPRISES, INC. AND DOSS WORTH MORELAND, JR.**

COME NOW the Defendants Werner Enterprises, Inc. (hereinafter "Werner") and Doss Worth Moreland, Jr. (hereinafter "Moreland") and move the court, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, to enter partial summary judgment in their favor as to the plaintiff's claim that Moreland "...wantonly operated the vehicle in question."

Werner and Moreland are entitled to summary judgment as to this claim because plaintiff cannot meet his burden of proof under the law. Under Alabama law, plaintiff must show that Moreland acted with reckless disregard or indifference to the consequences of any act or omission or with knowledge that injury would likely result from that act or omission.

In support of their motion, the movants assert that there is no genuine issue of material fact with regard to this claim. Thus, they are entitled to judgment as a matter of law.

## UNDISPUTED FACTS

1.      This suit arises from an automobile accident which occurred on January 16, 2008 in Troy, Alabama involving a vehicle driven by Moreland and a vehicle being driven by Jinright. [Complaint].

2.      At the time of the accident, Moreland was employed by Werner and was working within the line and scope of his duties. [Answer, Para. 9].

3.      Moreland has been employed by Werner for twenty-one (21) years. [Exhibit 1, Deposition Transcript of Doss W. Moreland, Jr. at p. 8].

4.      At the time relevant to this action, Moreland was working as a "recovery driver" for Werner. [Exhibit 1 at p. 7]. A recovery driver is a truck driver that is responsible for traveling around the country picking up trucks that have either been abandoned, in the shop, or impounded for one reason or another. *Id.* The recovery driver picks up the "abandoned" truck and brings it back to the nearest Werner terminal. *Id.*

5.      Moreland testified that on the day of the accident, he and two other recovery drivers, Steven Sarles and Bill Adwell, were on their way to Troy, Alabama to drop Mr. Sarles off in order for him to "recover" a Werner truck that was at an impound. [Exhibit 1 at pp. 23-24]. After that, Moreland and Adwell were going to drive to Tuscaloosa, Alabama in order for Mr. Adwell to pick up another vehicle. *Id.*

6.      The three men met in Lithia Springs, Georgia and drove a rental car to Troy. [Exhibit 1 at pp. 24-25].

7.      Specifically, Moreland testified that he arrived in Lithia Springs on the day prior to the accident. He then rented a 2008 Malibu from National Car Rental and waited

on Mr. Sarles to arrive before departing Lithia Springs the next day. [Exhibit 1 at pp. 23-25]. Therefore, on the day of the accident, Moreland had only been driving from Lithia Springs, Georgia to Troy, Alabama.

8.    Moreland, Sarles and Adwell did not arrive in Troy until after the impound had closed (5:00 p.m.).  Therefore,  they proceeded to get a room at the Comfort Inn in Troy. The plan was to wait until the next morning to drop Mr. Sarles off at the impound.  [Exhibit 1 at pp. 25-26].

9.    After checking in at the Comfort Inn, Moreland, Sarles and Adwell decided to continue South on Highway 231 in order to find a place to get something to eat. [Exhibit 1 at p. 26].  They went all the way into Troy and then decided to go back to the Subway sandwich shop on the southbound (or western) side of Highway 231.  *Id.* at pp. 26-27.

10.    At about six o'clock p.m. on January 16, 2008, Moreland, Sarles and Adwell finished their dinner at Subway and were preparing to head back to the Comfort Inn. [Exhibit 1 at p. 26].  Moreland was driving, while Adwell was in the passenger seat and Sarles was in the rear-passenger side seat.  *Id.* at pp. 26-27.

11.    In order to exit the Subway parking lot and turn left (north) onto Highway 231, Moreland went to the south end of the Subway parking lot, which allowed access to a crossover in the median and allowed for a left-hand turn.  *Id.* at p. 27.

12.    Moreland testified that it was raining and dark as he began to make his way out of the Subway parking lot.   *Id.*   As he approached the shoulder of the southbound lanes of 231, Moreland came to a complete stop, then looked to the left, looked to the right, and then looked back to the left.  *Id.*  He did not see anyone coming and he proceeded

forward toward the median separating the northbound and southbound lanes [there was an opening in the median at this location]. *Id.* at p. 28. In fact, Moreland testified that the first time he became aware that he might be involved in an accident was when he heard the Plaintiff's tires skidding on the wet pavement. *Id.* Moreland could not say what lane the Plaintiff was in at the time that he exited the Subway parking lot because he never saw the Plaintiff coming. *Id.* Further, Moreland could not say whether the Plaintiff's lights were on prior to impact. *Id.* Moreland could only testify that the impact occurred in the left hand lane of the southbound lanes of Highway 231 and that the Plaintiff's lights were off immediately after impact. *Id.* at pp. 27-28.

13. Although Moreland had a cell phone with him at the time of the accident, he was not using it. [Exhibit 1 at pp. 33-34].

14. The fact that Moreland never saw the Plaintiff until impact is consistent with the Plaintiff's own testimony. According to Mr. Jinright, he never saw the vehicle driven by Moreland until it was directly in front of him, "probably about halfway going over into the far left lane." [Exhibit 2, Deposition Transcript of Henry Jinright at p. 62]. Specifically, Jinright testified that he was only about six feet from Moreland's vehicle, when he first saw it. *Id.* at p. 64.

15. According to the Plaintiff, Moreland had his headlights on at the time of the accident. [Exhibit 2 at p. 66].

16. Neither Sarles, nor Adwell saw the Plaintiff's vehicle before the accident because neither were looking in that direction. [Exhibit 3, Deposition Transcript of S. Sarles at p. 8; Exhibit 4, Deposition Transcript of B. Adwell at p. 7].

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith, if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.  Further, once a proper motion for summary judgment is made, the party opposing the motion must set forth specific facts showing that there is a genuine issue of material fact.  see *Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir. 1992).  If the non-movant sets forth specific facts in support of allegations essential to his claim, then there exists a genuine issue for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  However, "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  The facts will be reviewed in the light most favorable to the non-moving party.  *King v. Chide*, 974 F. 2d 653, 656 (5th Cir. 1992).  Even so, a dispute about a material fact may be considered "genuine" only if the evidence, viewed in light of the plaintiff's <u>substantive evidentiary burden</u>, is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

With regard to the nonmovant's burden, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the record. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 236 (7th Cir.), *cert. denied*, 515 U.S. 1104 (1995).  In other words, the nonmoving party "must do more than simply show that there

is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. 574, 586. The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## ARGUMENT

This motion is directed to plaintiff's claim against Moreland and/or Werner for wanton operation of Moreland's vehicle. Based on the above standard, Werner and Moreland are entitled to summary judgment as to this claim. Plaintiff cannot satisfy his burden to establish the requisite elements of a claim for wantonness.

Specifically, as it relates to his claim for wantonness, the plaintiff cannot prove that Moreland acted with reckless indifference to the consequences of any alleged acts or omissions, or with knowledge that these alleged acts or omissions would likely result in injury to the plaintiff.

### Wantonness

### A. Relevant Law

The plaintiff's complaint alleges that Moreland, while acting in the line and scope of his employment with Werner, acted wantonly in causing the accident. However, there is no evidence of wanton conduct on the part of Moreland. Wantonness is defined as:

> " `The doing of some act or something with reckless indifference to the consequences of said act, or ... a failure or omission to do something, with reckless indifference to the consequences of such failure or omission, that is, that the party acting or failing to act is conscious of his conduct, and even though without any actual intent to injure is aware *from his knowledge of existing circumstances and conditions* that his conduct would probably result in injury to another or in damage to his property.' "

*Armstrong Business Services v. AmSouth Bank*, 817 So. 2d 665, 679-680 (*emphasis added*).

Thus, in order to establish that Moreland operated the vehicle in a wanton manner, there must be some evidence that he consciously disregarded circumstances and conditions that he was <u>aware</u> would likely result in the plaintiff's injuries.

### B. Analysis

There is no evidence that Moreland acted in a wanton manner in operating the rental vehicle in which he, Sarles and Adwell were traveling. Moreland testified that he stopped before entering the highway and looked to his left, to his right, and back to his left. The simple fact of the matter is that Moreland never saw the Plaintiff's vehicle until impact. This fact is consistent with the Plaintiff's own testimony. According to Mr. Jinright, he did not see Moreland's vehicle until it was already halfway into the far left lane and only about six feet from the front of his car.

Moreland's conduct is not consistent with wantonness. The plaintiff cannot show that Moreland's conduct constitutes "a failure or omission to do something, with reckless indifference to the consequences of such failure or omission." Moreland only pulled out into the highway after watching traffic in both directions and seeing no approaching traffic. In particular, Moreland never saw the Plaintiff's vehicle. Plaintiff cannot refute this fact when he, himself testified that he never saw Moreland's vehicle until it was already halfway into the far left lane and approximately six feet in front of him. For this reason, Moreland could not have been "aware from his knowledge of existing circumstances and conditions that his conduct would probably result in injury to another or in damage to his property."

Moreland's observation and, therefore awareness, was that there was no traffic approaching. Since Moreland never saw the Plaintiff (a fact which the Plaintiff cannot refute due to his failure to see Moreland), Moreland could not have had the conscious awareness of the existing circumstances so as to have acted with a reckless disregard for the Plaintiff's well-being.

## CONCLUSION

Moreland and Werner are entitled to judgment as a matter of law as to Plaintiff's claim that Moreland wantonly operated his vehicle. The Plaintiff simply cannot prove the necessary elements of this claim. Certainly, "...the record, taken as a whole, could not lead a rational trier of fact to find [that Moreland had a sufficient awareness of the conditions and circumstances to have acted with a reckless disregard with respect to the well-being of the plaintiff]."

For the foregoing reasons, Moreland and Werner move this Honorable Court to enter partial summary judgment in their favor as to this claim.

Respectfully submitted,

  /s/ Edgar M. Elliott, IV  
EDGAR M. ELLIOTT, IV  
RICHARD M. THAYER  
Attorneys for Defendants  
Werner Enterprises, Inc. and  
Doss Worth Moreland, Jr.

OF COUNSEL:

CHRISTIAN & SMALL LLP
505 20th Street North, Ste. 1800
Birmingham, AL 35203
(205) 250-6603
(205) 328-7234 (fax)

## CERTIFICATE OF SERVICE

      I hereby certify that I have this date electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following on this the 5th day of January, 2009:

Michael J. Crow
BEASLEY, ALLEN, CROW
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, Alabama 36103-4160

                                              /s/ Edgar M. Elliott, IV
                                              OF COUNSEL